JOHN I. PRYOR, Respondent. *v.* HUBBARD A. FOSTER, Appellant.

|130  171|
|144  712|

| 130   171|
|j170  ⁴296|

*It seems* in order to recover damages for false representations, fraud must be proved and cannot be presumed; the representations must be shown to have been made with a knowledge that they were false and untrue, and for the purpose of deceiving the plaintiff, and that they had that effect.

One who perpetrates a fraud commits a wrong for which he is liable to the defrauded party in at least nominal damages, even though no actual damages are shown.

Where a fraud is perpetrated in procuring the execution of a contract, the party defrauded has an election of remedies; he may, after knowledge of the fraud, rescind and recover back that which he has parted with, or he may continue to perform on his part, and, unless he has waived the fraud, maintain an action for the damages sustained.

If he rescinds, he must do so immediately on discovering the fraud; and if he continues to perform under the contract, he will be considered to have elected to affirm it.

In an action to recover damages for alleged false representations made by defendant on leasing a house to plaintiff as to the relative capacity of, and quantity of coal required to run the furnace therein, plaintiff's evidence tended to establish the false representations, that defendant knew them to be false, and made them with intent to induce plaintiff to enter into the lease. It appeared that plaintiff's term commenced in mid-winter; that he immediately, after taking possession, discovered that the furnace would not heat the house, and had several talks with defendant upon the subject, in which he stated he should hold the latter responsible. He continued in possession and paid the rent as it fell due. *Held*, that plaintiff had the right to continue to occupy the premises and demand the damages suffered through defendant's fraud, which were the difference in the rental value of the premises as they were and as they would have been if as represented; that plaintiff's payment of the rent did not raise the presumption of an intent to waive the fraud or the right to such damages.

*People* v. *Stephens* (71 N. Y. 527); *Barr* v. *N. Y., L. E. & W. R. R. Co.* (125 N. Y. 263), distinguished.

(Argued October 19, 1891; decided December 1, 1891.)

APPEAL from judgment of the General Term of the Superior Court of the city of Buffalo, entered upon an order made July 12, 1889, which affirmed a judgment in favor of plaintiff

entered upon a decision of the Municipal Court of the city of Buffalo.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edmund J. Plumley* for appellant. The proofs were wholly wanting in the elements from which fraud is to be inferred. (*Grove* v. *Wakeman*, 11 Wend. 188; *Schultz* v. *Hoagland*, 85 N. Y. 467; *Baird* v. *Mayor, etc.*, 96 id. 593; *Phillips* on Ev. 599; *Macullar* v. *Rindskopf*, 116 N. Y. 436; *Hammatt* v. *Emerson*, 27 Me. 308; *Meyer* v. *Amidon*, 45 N. Y. 169; *Oberlander* v. *Spiess*, Id. 175; *Duffany* v. *Ferguson*, 66 id. 482–485; *Jackson* v. *Badger*, 109 id. 632; *Salisbury* v. *Howe*, 87 id. 128; *Russell* v. *Clark*, 7 Cranch. 19; *Lord* v. *Goddard*, 13 How. [U. S.] 198; *Cooper* v. *Schlesinger*, 111 U. S. 148; *Macullar* v. *McKinley*, 99 N. Y. 358; *Brackett* v. *Griswold*, 112 id. 467.) The representations in question were simply expressive of the defendant's opinion and, upon the proofs as they stood when the motion for a nonsuit was made, admitted of no other interpretation, and for that reason the motion should have been granted. (2 Addison on Torts, 422; *Gordon* v. *Parmalee*, 2 Allen, 212; *Judwine* v. *Slade*, 2 Esp. 572; *Caulson* v. *Whiting*, 14 Abb. [N. C.] 60; *Akin* v. *Kellogg*, 119 N. Y. 449.) Defendant was guilty of no concealment of any matter which it was his duty to disclose, and was not liable. (*Van Epps* v. *Harrison*, 5 Hill, 69; *Starr* v. *Bernard*, Id. 503; *Vandewalker* v. *Osmer*, 1 T. & C. 50; 65 Barb. 556; *Weidner* v. *Philips*, 39 Hun, 1; *People's Bank* v. *Bogart*, 81 N. Y. 101, 109; *Chrysler* v. *Canaday*, 90 id. 272, 279; *Wood* v. *Amory*, 105 id. 278; *Tockerson* v. *Chapin*, 20 J. & S. 16; *Brown* v. *Burhaus*, 4 Hun, 227; *McDonald* v. *Flamme*, 13 Abb. [N. C.] 457.) The plaintiff waived any claim to damages by reason of the defendant's representations. (*People* v. *Stephens*, 71 N. Y. 356; *Knapp* v. *Roche*, 94 id. 333; Story on Cont. §§ 516, 517; Benj. on Sales, 338; *People's Bank* v. *Bogart*, 81 N. Y. 109; *Wood*

v. *Amory,* 105 id. 281, 282 ; Cooley on Torts [2d ed.] 557 ; *Reilly* v. *Mayor, etc.,* 111 N. Y. 478 ; *Mayor, etc.,* v. *Brady,* 115 id. 611 ; *Slaughter* v. *Gerson,* 13 Wall. 379 ; *Studer* v. *Bliestein,* 115 N. Y. 324 ; *Garlock* v. *Markham,* 31 N. Y. S. R. 263 ; *S. D. Co.* v. *Silva,* 125 U. S. 678 ; *Reed* v. *Randall,* 29 N. Y. 358 ; *Neaffie* v. *Hart,* 4 Lans. 4 ; *Vernol* v. *Vernol,* 63 N. Y. 47 ; *Baird* v. *Mayor, etc.,* 96 id. 598 ; *Acer* v. *Hotchkiss,* 97 id. 406 ; *Norton* v. *Dreyfus,* 106 id. 94 ; *C. I. Co.* v. *Pope,* 108 id. 236 ; *Brown* v. *Foster,* Id. 387 ; *Lack* v. *Wykoff,* 11 N. Y. S. R. 678 ; *Bowen* v. *Mandeville,* 95 N. Y. 237 ; *Boreel* v. *Lawton,* 90 id. 293 ; *Rennett* v. *Bates,* 94 id. 273 ; *Cox* v. *Mayor,* 103 id. 527 ; *Sexton* v. *Pepper,* 28 Hun, 31 ; *Phelps* v. *Mayor,* 112 N. Y. 216 ; *Barr* v. *N. Y., L. E. & W. R. R. Co.,* 125 id. 263.) The trial court erred in permitting the hypothetical question put to the witness Newbrook, and other witnesses, to be answered, against the objection of the defendant. (*Morgan* v. *Skidmore,* 3 Abb. [N. C.] 106 ; *Tockerson* v. *Chapin,* 20 J. & S. 16.) The proofs failed to ascertain and fix the amount of the damage sustained by the plaintiff, or to entitle him to a judgment for any amount of damage. (*Tockerson* v. *Chapin,* 20 J. & S. 16 ; *Salisbury* v. *Howe,* 87 N. Y. 135.) The proofs fully authorize a finding that defendant's opinion was amply justified, and hence there was no fraud. (*Bennett* v. *Buchan,* 76 N. Y. 386 ; *Wood* v. *Amory,* 105 id. 281 ; *Salisbury* v. *Howe,* 87 id. 135 ; *Cullen* v. *Hernz,* 13 N. Y. S. R. 336 ; *Stitt* v. *Little,* 63 N. Y. 431, 432 ; *Hoyt* v. *Godfrey,* 88 id. 669 ; *Duffany* v. *Ferguson,* 66 id. 485 ; *Akin* v. *Kellogg,* 119 id. 449.) Plaintiff cannot complain of the size, construction, kind or mode of operation of the heating apparatus ; and the proof does not show that it was broken down, worn out, or out of order in any respect. (*Dambmann* v. *Schulting,* 75 N. Y. 61, 62 ; *People's Bank* v. *Bogart,* 81 id. 108, 109 ; *Wood* v. *Amory,* 105 id. 281 ; *Simons* v. *Seward,* 7 N. Y. S. R. 57, 58 ; *Edwards* v. *N. Y. & H. R. R. Co.,* 98 N. Y. 247.)

*Tracy C. Becker* for respondent. The question most strongly urged by appellant is that plaintiff by remaining on the premises after he had learned of the defect in the heating apparatus, and the falsity of the representations, waived his right to recover any damages. This point is not well taken. (*Whitney* v. *Allaire*, 1 N. Y. 308, 309; *Smith* v. *Country-man*, 30 id. 670–675; *Miller* v. *Barber*, 66 id. 558; *Krum* v. *Beach*, 96 id. 398; *Strong* v. *Strong*, 102 id. 69.) The measure of damages adopted by the court below was the one suggested by the opinion at General Term on the first appeal, the difference in the rental value of a house with a furnace capable of heating it comfortably as represented, and such a house heated as the one in question here. This was the correct rule. (*Cook* v. *Soule*, 56 N. Y. 420.) The judgment below should be affirmed not only with costs, but also with ten per cent on the recovery below, which should be awarded as damages for the delay caused by this appeal. (Code Civ. Pro. § 3251; *Jackson* v. *City of Rochester*, 124 N. Y. 624.)

HAIGHT, J. On the 27th day of January, 1887, the defendant leased to the plaintiff a house on the corner of Allen and Wadsworth streets in the city of Buffalo for the term of fifteen months and five days.

This action was brought to recover damages for alleged false representations made by the defendant to the plaintiff to the effect that the furnace in the house was a good one; that it heated the house nicely and comfortably with from eight to ten tons of coal per year; that in a moderate winter it would heat the house thoroughly with eight tons and in a cold winter with ten tons.

Fraud must be proved and not presumed. The representations alleged must be made with a knowledge that they are false and untrue and for the purpose of deceiving the plaintiff. That these facts must be established to the satisfaction of the jury no one will question.

Upon the trial evidence was given on behalf of the plaintiff tending to show that the representations were made by the

defendant; that they were false and known by him so to be and were made with the intent to induce the plaintiff to enter into the lease. Whilst this evidence was controverted, it became a question of fact for the determination of the trial court, and inasmuch as the judgment of that court has been affirmed by the General Term of the Superior Court that determination must here be considered final and conclusive. There being evidence to sustain the finding, the defendant cannot here avail himself of his exception taken upon the refusal of his motion for a nonsuit.

We, therefore, pass to the consideration of the main question raised for review, and that is whether or not the plaintiff's right to maintain this action has been waived by his subsequent conduct.

The rule is that where a fraud is perpetrated in procuring the execution of a contract the party defrauded has an election of remedies. He may after knowledge of the fraud rescind the contract and recover back that which he has parted with, or he may continue to perform on his part and maintain an action for such damages as he has sustained by reason of the fraud. (*Whitney* v. *Allaire*, 1 Hill, 484; *S. C.*, 4 Denio, 554; affirmed, 1 N. Y. 305; *Miller* v. *Barber*, 66 id. 558.)

If he rescind, he must do so immediately upon the discovery of the fraud, and if he continue the use and occupation of the property received under the contract, he will be deemed to have elected to affirm it. (*Strong* v. *Strong*, 102 N. Y. 69; *Schiffer* v. *Dietz*, 83 id. 300.)

The plaintiff in this case did not rescind. He continued in the use and occupation of the premises during the entire term for which they were leased and paid the rent thereon from month to month as it became due and payable.

He may, however, have his action for damages, unless he has waived the same.

In Bigelow on Fraud, 184, it is said that, "If a party with knowledge that a fraud has been perpetrated upon him in a particular transaction, confirmed the transaction by making new agreements or engagements respecting it or by retaining

and using the subject of it after knowledge, or otherwise recognize it as binding, he thereby waives the right to treat it as invalid and abandon his right to rescind if it be a case of contract, or to redress if it be a tort not attended with a contract with the wrong-doer. If the fraud result in a contract, performance of the same after discovering that it was fraudulently obtained by the opposite party, does not preclude a person from suing for damages on account of the fraud. The injured party may retain the benefits of the contract, confirm its validity, and still recover damages for the fraud by which he was induced to make it; or he may recoup any damages which he has sustained if the opposite party sue him for money due on the contract, or other failure to perform it." * * * And again, "There must be something equivalent to a ratification of the contract after discovery of the fraud; and this may be either by acts of express recognition of its binding force or by allowing the other party to proceed upon it and change his position, or by the intervention of the rights and interests of third innocent persons. But such facts as these merely preclude the injured party from repudiating the contract. He may still bring an action for the damage sustained by being drawn into the contract, even though the contract has passed into judgment."

In Cooley on Torts, 505, it is said that "Fraud may be waived by an express affirmance of the contract. Where an affirmance is relied upon, it should appear that the party having a right to complain of the fraud freely and with a full knowledge of his rights in some form clearly manifested his intention to abide by the contract and waive any remedy he might have had for the deception."

And in *St. John* v. *Hendrickson* (81 Ind. 350–352), it is said that "There may be waiver of a right to recover damages for the loss resulting from false and fraudulent representations by an express affirmance. It is essential to such a waiver that the party should possess full knowledge of the fraud practiced upon him; that he should intend to confirm the contract and abandon all right to recover for the loss resulting from the

fraud." * * * And again the court says, "We fully recognize and approve the rule that a party may retain what he received and stand to his bargain and recover for the loss caused him by the fraud. * * * We neither hold nor mean to hold that affirmance by retention of the thing bargained for cuts off an action for damages. We do hold that where a party with full knowledge of all the material facts, does an act which indicates his intention to stand to the contract and waive all right of action for the fraud, he cannot maintain an action for the original wrong practiced upon him. Where the affirmance of the contract is equivalent to a ratification, all right of action is gone. It is only equivalent to a ratification when made with full knowledge of the fraud and of all material facts and with the intention of abiding by the contract and waiving all right to recover for the deception."

It will thus be seen that the question of waiver is largely one of intent. It appears from the testimony of the plaintiff that he moved into the house on the twentieth of February; that immediately thereafter he discovered that the furnace would not heat the house and that he had several talks with the defendant in reference thereto; that on one occasion the defendant came to the house and asked the plaintiff if he had turned the stop-cocks and said: "If you want heat on one side of the house turn this; if the other, turn this;" that the plaintiff then told him that it was impossible to heat the house; that he had never seen a day in cold weather when he could sit comfortably in any room unless all the heat was thrown into that room; that on another occasion he had a conversation with the defendant at the store on or about the second day of May; that he then said to the defendant that it was impossible to heat the house with the furnace; that he must fix it or he would hold him responsible. These conversations occurring from time to time shortly after the discovery of the fact that the furnace would not heat the house, accompanied with the plaintiff's statement that he should hold the defendant responsible, does not indicate an intent on his part to waive his right to recover damages. The question is, therefore, narrowed to the determina-

tion as to whether the payment of rent from month to month raises the presumption of an intent to waive the fraud. It is not apparrent that the payment of the rent changed the position of the defendant. The lease between the parties had been executed. If the plaintiff had been induced to enter into it through the fraud of the defendant he was entitled to maintain his action for the damages he had sustained immediately upon the discovery of the fraud. The liability of the defendant was neither increased nor diminished by such payment. The plaintiff's measure of damages was the difference in the rental value of the premises as they were and as they would have been had they been as represented. The plaintiff had the right to make as good a bargain as he could, and was entitled to the full benefits thereof. He was, therefore, entitled to full indemnity for the damages that he sustained. (*Krumm* v. *Beach*, 96 N. Y. 398–407.)

His damages did not arise solely in consequence of the payments of rent reserved by the lease as is contended, for when a party to a contract perpetrates a fraud he commits a wrong for which he is liable to the defrauded party in at least nominal damages, even though no actual damages be shown. (*Northrop* v. *Hill*, 57 N. Y. 351–354.)

In the case of *Whitney* v. *Allaire* (*supra*), the action was for rent under a lease. The defendant sought to offset the amount which he had been compelled to pay a third party for an adjoining lot which the plaintiff had falsely and fraudulently represented to be his and included in the lease. It was held that the defendant was entitled to a deduction by reason of the fraud of the sum which he had been so compelled to pay.

In the case of *Cook* v. *Soule* (56 N. Y. 420), it was held that in an action to recover rent, the lessee had a right to set up as a counter-claim damages arising from the breach of an agreement in the lease on the part of the lessor to keep the premises in repair; that the fact that the lessee had paid the rent, except for the last quarter, does not deprive him of the right to counter-claim his damages for the entire year, and if in

excess of the rent, he is entitled to a verdict for such excess. (See also *Dennison* v. *Grove,* 52 N. J. Law, 144.)

Whilst the plaintiff might have offset his damages in an action for rent reserved, we do not think he was bound to refuse payment thereof and then wait for an action to be brought against him therefor. Being a tenant, he might be proceeded against in summary proceedings for the non-payment of rent. In such proceedings his defense of fraud would not be available. Whether he could interfere through equity and restrain the proceedings, it is not necessary to now consider.

We do not regard the case of *People* v. *Stephens* (71 N. Y. 527), or that of *Barr* v. *N. Y., L. E. & W. R. R. Co.* (125 id. 263), to be in conflict with the views above expressed.

In the former case, the action was brought to recover damages alleged to have been sustained in consequence of a fraudulent and unlawful combination and conspiracy between defendants to prevent competition, and to deceive the contracting board in letting repair contracts for certain sections of the state canals at excessive prices. The action was brought by the attorney-general to recover moneys paid by the state under such contracts, in excess of the fair value of the work performed and materials furnished. Subsequently an act was passed (Laws of 1870, chapter 55) by which the canal board was authorized, upon the recommendation of the canal commissioners whenever they should deem it to the interest of the state to cancel and annul any contract or contracts for the repairs of the canals theretofore made, by a resolution to be entered on the minutes of the board, and that every contractor whose contract should be canceled and annulled by the board should be entitled to receive the money deposited as security for the performance of his contract, with the accumulated interest thereon, together with the money earned on such contract up to the time of the annulling thereof, and a fair compensation for the tools, materials and implements necessarily procured for the purpose of performing the contract. The canal board did not see fit to cancel the contract of the

180 PRYOR v. FOSTER. [Dec.,

Opinion of the Court, per Haight, J.

defendants in that action, but required them to perform it, and at the end of each month voluntarily paid the amount earned under the contract.

It was held that this act having been passed with full knowledge on the part of the legislature of the means by which the contract had been obtained, that it must be assumed that the legislature did not deem it in the interest of the state to avail itself of the right to claim damages for the fraud, nor to refuse payment for the work already done.

It is true that ALLEN, J., in delivering the opinion of the court, says that " the parting with the consideration constitutes the legal damage, and that being done with full knowledge of the cheat, fraud or deception cannot be alleged   *   *   *." That " the state agents, acting within the scope of their authority, with full knowledge of the acts and combinations charged, and every fact affecting the validity of the contract, and with full knowledge of the character and value of the services and materials rendered and furnished, required of the defendants a performance of the contract, and at the end of each month paid the stipulated compensation without protest or objection, and without coercion or duress." He further states : " It follows that having the power and right to repudiate and refuse to perform the contract after the commencement of performance, and without waiving liability for damages if the fraud existed as alleged, and continuance of the contract with knowledge of the fraud and under circumstances entitling the contractor to the prices stipulated by the contract, and voluntarily paying the stipulated compensation was a waiver of the fraud."

But it will be observed that in that case the contract, unlike the one under consideration in this case, was executory and materially different. The action was to recover back money in excess of the true value of the work performed, which had been voluntarily paid by the state with full knowledge of the fraudulent conspiracy. No question was made but that the contractors had performed their work in accordance with the contract. The only damages, therefore, which the state

could suffer was because of the payment of a greater sum than the work was reasonably or fairly worth. The state, as we have seen, had the right to rescind the contract, and had it done so, or had it refused to pay for the services performed, it would have suffered no damage. It was, therefore, held that the payments were voluntary, and that the plaintiff could not recover.

But in this case a very different question is presented. As we have shown, a different rule prevails as to the measure of damages. The plaintiff leased the premises in midwinter and moved into the same with his family. He could not then be compelled to rescind the contract or be deemed to have waived it; for, as we have shown, he had an election of remedies. It might not have been convenient for him at that season of the year to find another house into which he could move. He had the right to continue to occupy the house under his executed contract and demand the damages that he had suffered by reason of the fraud; and it does not appear to us that under the circumstances of this case that his payment of the rent, thereby avoiding the annoyance of summary proceedings, should be construed as a waiver of his right to such damages.

In *Barr* v. *N. Y., L. E. & W. R. R. Co.* (*supra*), the case appears to have been disposed of upon the ground of ratification, and the question of waiver by reason of rent paid does not appear to have been considered.

We do not deem a discussion necessary as to the other points raised.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.