GOODMAN et al. v. LEONHARDT et al.

(Supreme Court, Appellate Division, Fourth Department. December 16, 1896.)

VENDOR AND PURCHASER—RESCISSION OF CONTRACT—WAIVER.

The payment of an installment on a contract for the purchase of land, after knowledge of misrepresentation as to the location of the tract, cannot be

regarded as a waiver of the right to rescind, where, before such payment was made, there was an offer to reduce the contract price, and a relocation by the vendor, which was also subsequently shown to be erroneous. Green, J., dissenting.

Appeal from judgment on report of referee.

Action by Moses D. Goodman and others against Henry C. Leonnardt and others. The complaint was dismissed, and plaintiffs appeal. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

P. M. Sullivan, for appellants.

Theodore Wende, for respondents.

ADAMS, J. The learned referee before whom this case was tried has found: That upon the 6th day of February, 1893, one Christopher Laborn entered into a written contract with Henry Hauer and Christopher Hauer for the sale of a tract of land situate in the town of Wheatfield, Niagara county, consisting of 15.83 acres, upon the terms and conditions mentioned in such contract. That thereafter, and prior to the 14th day of March, 1893, the defendants also entered into a written contract, by the terms of which the defendant Laborn obligated himself to convey the land in question to his co-defendant Leonhardt for the price of $400 per acre. That subsequently, and on the 14th day of March, 1893, the defendant Leonhardt entered into an oral agreement with the plaintiffs herein, by the terms of which it was agreed that Laborn should thereafter make a written contract to convey such premises to the plaintiffs; and that, in pursuance of this oral agreement, Laborn did thereafter execute a contract in writing with the plaintiffs, whereby he obligated himself to convey the premises aforesaid to them at and for the price of $475 an acre. The contract provided that $500 of the purchase price should be paid upon its execution; that an additional $500 should be paid upon the 15th day of April, and $1,200 upon the 1st day of May, following; and that, upon the payment of the last-mentioned sum, a deed of the premises should be executed and delivered to the plaintiffs by the defendant Laborn, and the balance of the purchase price secured to the grantor by a mortgage upon the premises, together with a bond of the grantees,—the terms and conditions of the bond and mortgage being expressly provided for in the contract. That, when the defendant Leonhardt entered into the oral agreement with the plaintiffs, the location of the land in question was unknown to the latter, but it was represented to them by Leonhardt that it was located at or near the junction of certain highways in the town of Wheatfield, known as the "Witmer Road" and the "Oderboltz Road"; whereas, in fact, such lands were not located at the point represented, but were distant therefrom about 120 rods, and the land actually agreed to be conveyed by the contract entered into between the plaintiffs and the defendants was of less value than that which was described by the defendant Leonhardt as the land intended to be conveyed.

It further appears that the plaintiffs made the first payment contemplated by their contract in accordance with the terms thereof, but that, before the second payment became due, the plaintiff Moses D. Goodman discovered that a mistake had been made in the location of the land, which fact he brought to the attention of the defendants, who attempted to rectify the same by making another location, whereupon the second payment provided for by the contract was made, but it was subsequently discovered that the second location was also erroneous, and that the premises conveyed by the description in the contract were in quite a different locality.

The facts thus narrated, save, possibly, those relating to the second location, were virtually conceded; and upon such facts the plaintiffs contend that they were warranted in claiming that they were induced to enter into the contract for the purchase of the premises in question by the fraudulent misrepresentations upon the part of the defendants representing their location. If this contention is well founded, then either one of two remedies was available to them, viz. to sue for the damages which resulted from the fraud, or to bring a suit in equity to have the contract rescinded and for such relief as might be appropriate to their case. Gould v. Bank, 99 N. Y. 333, 2 N. E. 16; Strong v. Strong, 102 N. Y. 69, 5 N. E. 799; Pryor v. Foster, 130 N. Y. 171, 29 N. E. 123. Electing to pursue the latter remedy, and having brought this action to recover back the moneys paid by them upon their contract, offering in their complaint to surrender such contract for rescission and cancellation, it becomes necessary to determine how far their appeal to a court of equity is sustained by the facts of the case. The learned referee, while finding as a fact that a misrepresentation was made by the defendants as to the location of the land in question, has reached the conclusion that the same was made by mistake, and was not intentional; and he further finds that, before the second payment was made by the plaintiffs, they had discovered the mistake, and made their payment with full knowledge of its existence, thereby waiving all right which otherwise they might have to insist upon a rescission of the contract. The evidence in this case, which is contained in the record before us, is not altogether satisfactory upon the question of whether or not the representations made in regard to the location of this land were intentional or unintentional. The defendants were both sworn upon the trial, and neither of them states that no fraud was intended; but, in our view of the case it is perhaps unimportant whether the misrepresentations were the result of design or accident, for, even if no actual fraud was intended to be perpetrated, a mistake certainly was made, by which the plaintiffs were misled, and for which equity will furnish the appropriate relief. Crowe v. Lewin, 95 N. Y. 423.

The more serious question for our consideration is whether or not the plaintiffs have deprived themselves of their right to resort to a court of equity for the relief demanded in this action, by reason of some act of theirs which may be regarded as equivalent to a waiver. As has already been stated, the learned referee has found that the

plaintiffs made their second payment upon the contract with full knowledge of the mistake which had been made in the location of the land; but this finding, we think, is hardly warranted by the evidence. So far as the plaintiff Mary B. Goodman is concerned, there is no evidence whatever that she personally knew anything about any of the transactions here narrated. It does appear, however, that one Abram Goodman acted in her behalf in negotiating for and entering into the contract in question, and there is some evidence tending to show that, prior to the making of the second payment, he went with the defendant Leonhardt to see the premises, and expressed himself satisfied in regard to their location, in consequence of which it is contended by the defendants that his principal, Mary B. Goodman, became charged with whatever knowledge he as her agent possessed. The defendant Leonhardt testifies that this inspection took place upon the 16th of April, and that the second payment was made the following day; but in this he is contradicted by Abram Goodman, who says that he did not see the premises until some time after the second payment fell due, and that, when he did see them, he objected to the location, whereupon Leonhardt offered to make some deduction from the contract price. If this embraced the entire evidence relating to the alleged waiver upon the part of Mrs. Goodman, we might feel constrained to adopt the finding and conclusion of the learned referee upon that branch of the case; but it seems, by concurrent and undisputed evidence, that the second payment was made by the plaintiffs Zimmerman and Moses Goodman, that neither Mrs. Goodman nor Abram Goodman contributed to or was aware of such payment, and that the same was made in consequence of another attempted location of the premises by Laborn, which occurred during an interview between him and Moses, and which turned out to be even more erroneous than the first one, it being 125 rods distant from the point where the premises were actually located. It may be that upon another trial it can more satisfactorily be made to appear that the plaintiffs have forfeited their rights to rescind their contract and recover back the moneys paid thereon; but, as advised by the present record, we find ourselves unable to concur in the result reached by the learned referee, and we conclude, therefore, that a new trial should be directed.

Judgment reversed, and new trial directed, with costs to abide the event. All concur, except GREEN, J., dissenting.

GREEN, J. (dissenting). It appears from the evidence, without contradiction, that the original contract accurately described the premises contracted to be sold by the defendants and to be purchased by the plaintiffs. It clearly appears from the evidence that the statements made by Dr. Leonhardt, at the time of the making of the contract, as to the location of the premises contracted for, were made through a misapprehension upon his part as to the true location of the premises. There is nothing to show that he was attempting to conceal the true location, or that he was fraudulently misrepresenting the situation of the land. Before the second pay-

ment was made, the question of the location of the premises was
discussed by the parties who were interested, or by those acting in
behalf of those interested, in the contract. Judge Potter finds, as
matter of fact, as follows:

"That one Abram Goodman was the agent for the plaintiff Mary B. Goodman
in negotiating for and entering into said contract, and transacting all the business
in respect thereto for her except the signature thereto; that, in acting for the said
plaintiff Mary Goodman, he became acquainted with the facts in respect to the
mistake in reference to the location of said lands, and on the 16th day of April,
1893, he went with the defendant Leonhardt to the real location, and saw the
premises which were actually agreed to be conveyed; that thereafter, and on the
17th day of April, said second payment of $500 was made, pursuant to said contract;
that the plaintiff Moses D. Goodman had knowledge of the location of the premises
before said second payment was made."

It seems to me there is evidence sufficient to warrant this finding
of the referee. There is a conflict in the evidence, and that conflict
could best be decided by the one who had the witnesses and the
parties before him upon the trial of the action. The purchasers had
before them at all times the actual, accurate description of the prem-
ises contracted for. When it was made apparent to them that the
premises were not in the exact location as represented to them, the
exact location of the property could easily have been ascertained
from the description of the premises in the contract itself. It ap-
pears that, after this question arose, no steps were taken by them
to locate the property by this description; but they went to Dr.
Leonhardt before making the second payment, and he showed them
the location of the premises. The plaintiffs claim that he did not
then properly locate the premises, but that he showed them a piece
125 rods from the premises in question. Dr. Leonhardt testifies that
he showed them these premises. This was a question of fact for
the referee to determine, and he has determined favorably to Dr.
Leonhardt. I think he was justified in so doing. The plaintiffs
claim that, in the first statement, the doctor told them the property
was on the Oderboltz road, next to land of Hill Bros., and that it
was further represented that the Hill Bros. tract was on the corner
of the Witmer and Oderboltz roads. It appears that the Hill Bros.
land was on the Oderboltz road, and that the real location of the
premises in question was adjoining the piece of property owned by
the Hills. It appears from the evidence that Moses Goodman, be-
fore the second payment was made, called upon Hill Bros., in Buf-
falo, and ascertained from them that they did own a piece of land in
that locality, but that it was not the piece on the corner of Witmer
and Oderboltz roads; and after that conversation, Goodman went
to the doctor, and informed him what he had learned from Hill
Bros. Subsequently to this the land was shown to Goodman by
the doctor, according to the doctor's testimony. With the proper
description of this land in the possession of the plaintiffs, and with
the investigation which was made, and the conversation had be-
tween the parties interested, it appears to me that these plaintiffs
were sufficiently apprised of the true location of this land before
they made the second payment.

I believe the referee has correctly decided all matters in issue

between these parties, and that his decision should be upheld. I shall give this case further attention before our meeting in November, and reserve the right to change my mind upon the views above expressed.