(8 Misc. Rep. 137; 9 Misc. Rep. 167.)

### ROTHMILLER v. STEIN et al.

(Common Pleas of New York City and County, General Term. June 27, 1894.)

FALSE REPRESENTATIONS—LIABILITY OF OFFICERS OF CORPORATION.

Where the managing officers of a corporation make false representations to a stockholder as to the financial condition of the company, and he, relying on such representations, accepts a certain alternative offer to purchase his stock, such officers are liable for the difference between the sum obtained on such sale and the sum which the stockholder would have received if he had accepted the other alternative offer.

Appeal from special term.

Action by Adolph Rothmiller against Theodore G. Stein and Edward Weber to recover damages for false representations. From an interlocutory judgment overruling a demurrer to the complaint, defendants appeal. Affirmed.

The plaintiff was a stockholder of the Grooved Plaster Slab Manufacturing Company, and the defendants were its officers and directors, and had the sole and exclusive management of its business. In May, 1892, the plaintiff asked them for a statement of the affairs of the company, and, in answer to this request, he received a statement in writing, signed by the defendant Stein, as secretary and treasurer, and confirmed by the defendant Weber, wherein they stated that the assets of the company were $45,897.73, that its liabilities did not exceed $2,226.15, that it had a cash balance on hand amounting to $19,115.73, and had very large orders and was doing a very large business. Shortly thereafter, Mr. Emanuel Moore, another stockholder of the company, being desirous to purchase the plaintiff's stock, offered to pay him $80 per share therefor in cash, or part therefor, as follows: $50 per share in cash, and $50 on January 1, 1894, if in the meanwhile the stock had earned dividends amounting to 10 per cent. The plaintiff communicated these offers to the defendants, and asked them for a further statement of the affairs of the company. In answer to this request, and knowing the terms of the two offers received by the plaintiff from Mr. Moore for his stock, the defendants made a further statement to the plaintiff to the effect that the assets of the company had greatly increased since their statement of June, that its business had grown very much larger, and that they had very large orders on hand, so that they would declare a much larger dividend than 10 per cent. in the year 1893, and that he should not sell his stock for less than par. Relying on the truth of these statements, the plaintiff rejected the offer of $80 cash per share, and accepted the other offer, and sold to Mr. Moore 100 shares of stock on said terms, viz. $50 per share in cash, and an agreement from Moore to pay $50 on January 1, 1894, if 10 per cent. dividends had been declared in the meanwhile. All the statements made by the defendants as to the status of the company were false and untrue, and known to the defendants to be false at the times they were so made. They were made for the purpose of deceiving the plaintiff. The company did not have the assets which the defendants stated it had, nor did it have the large orders on hand claimed by them to exist. Neither did it have the cash on hand which they stated it had. On the contrary, while this cash asset should have consisted

partially of $10,000 subscribed by the defendants for stock, and which they had certified under oath that they had paid in, the defendants had not paid in this subscription, but, on the contrary, had secretly withdrawn large sums of money from the treasury of the company as salaries.

The opinion of Giegerich, J., on overruling the demurrer, is as follows:

Judgment for $5,500 is demanded, which is the amount plaintiff lost by reason of the fact that a dividend of 10 per cent. was not declared. This amount could be recovered only upon the theory that the action is for mismanagement, and not for deceit. Upon the latter ground, the difference between $8,800 (the amount he would have realized upon a sale of the 110 shares at $80 each) and $5,500, the amount actually received, measured the extent of his possible recovery. So far as the action is for mismanagement, the demurrer is good. Greaves v. Gouge, 69 N. Y. 159, was an action for misappropriating funds and property, and for depreciation in market value of stock. The rule was laid down as follows: "A stockholder may bring an action for the benefit of himself and others similarly situated, and in such an action the corporation must necessarily be made a party defendant. When a stockholder brings such an action, the complaint should allege that the corporation, on being applied to, refuses to prosecute, and this averment constitutes an essential element of the cause of action. The complaint is defective and insufficient without it." See, also, Ang. & A. Corp. p. 325, § 312, and cases cited; Brinkerhoff v. Bostwick, 88 N. Y. 52, 56.

Regarding the complaint as in deceit, there is some doubt as to whether damage is sufficiently alleged. The defendants argue that no loss resulted from the deceit, because, had the truth been told, and the alleged insolvency disclosed, the plaintiff could not, without fraud on his part, have sold to Moore for the $80 per share offered, or even for the $50 received. This is by no means clear. It does not appear that the plaintiff would have been under any legal obligations to reveal to Moore the facts concerning the company's condition, had the officers correctly stated them. Moore was a fellow stockholder, had equal means of knowledge, and sustained no peculiar or fiduciary relation to the plaintiff. Bench v. Sheldon, 14 Barb. 66; Story, Eq. Jur. pp. 205-208. The allegations of insolvency must be taken in connection with other parts of the complaint,—for example, the averments that defendants had failed to pay in $10,000, as they ought to have done, and that the company had acquired patents and a business already existing. What Moore's object may have been in desiring plaintiff's stock cannot be told. It may have been to obtain control of the company, for the purpose of changing the management and enforcing payment of the $10,000 subscribed and other obligations, or because he believed the patents would ultimately be more valuable. The question is not the condition of the company at the time of the sale, or even the market value or the true worth of the stock, but what Moore was willing to pay for plaintiff's holding. His offer is prima facie proof upon the point. What his motive may have been should not be conjectured to defeat the complaint, so long as the facts alleged do not show that he would not have made the same or substantially as good an offer had defendants' false statements never been made. The demurrer is overruled, with costs, with leave to the defendants to answer within twenty days upon payment of the costs of this demurrer.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Louis Marshall, for appellants.
William J. Lippmann, for respondent.

BISCHOFF, J. The action is brought against two managing officers of a corporation to recover damages for false representations as to the financial condition and state of earnings of the company, relying upon which the plaintiff, a stockholder, availed himself of a certain alternative offer for the purchase of his stock made to him

by one Moore, a fellow stockholder. It is alleged that, by reason of the falsity of these representations, plaintiff was damaged in the difference between the sum obtained by him upon this sale and the amount which, but for the representations, he would have accepted and received from Moore upon acceding to the latter's proposition in the alternative other than that which he actually accepted. This offer was for the purchase of plaintiff's stock at $80 per share, in cash, or for the sum of $50 per share, in cash, and the further sum of $50, payable if the dividends declared by the corporation during the succeeding year should amount to 10 per cent. Relying upon the representations made by defendants, plaintiff accepted the latter offer, and, by reason of the actual condition of the company, the contingent payment from Moore never became payable.

The statements alleged, and here admitted to have been made, with regard to the actual condition of the corporation, were certainly of a nature to justify the action of the plaintiff in accepting the offer in the alternative mentioned, and that plaintiff was damaged by this acceptance clearly appears from the allegations. The pleading is not open to criticism with regard to the essential allegations of falsity and knowledge. For appellants, it is contended that there was no damage to plaintiff, for a true report as to the condition alleged to have existed at the time (actual insolvency) would have precluded plaintiff's acceptance of the advantageous offer without fraud as against Moore; but this is not a tenable position in view of the nature of the action. Consistently with the established theory of an action for deceit, the damages are here claimed to have been sustained by plaintiff through his reliance upon the representations made. It does not appear that Moore's offer was in any way connected with the representation, or that he knew of the report thus made, which appears to have been for plaintiff's supposed enlightenment alone. The proposition is alleged to have been an independent one, coming unsolicited. Plaintiff was called upon to exercise an option, should he assent to this proposition, and, while so assenting, he made his election in reliance upon the defendant's representations, and was thereby damaged, as subsequently appeared. He was not bound to so rely. He might, in disregard of the representations, have accepted the other alternative held out, and have obtained the sum now claimed, without any possible fraud on his part as against Moore. But by his reliance he was damaged in the difference noted, and the cause of action accrued. The false representations alone did not create this cause of action. Defendants having chosen to make such representations, their liability was suspended upon the plaintiff's justifiable acts of reliance with the consequent damage as shown. Agents of a corporation are subject to the general common-law rule imposing upon a party making a false representation, whereby another is misled, a liability for its direct consequences. Mor. Corp. § 573. Plaintiff was not bound in any way to verify the report given him by defendants as directors, although it must be assumed that he had the opportunity. The corporation was organized under the laws of the state of New Jersey, and by the common law, which is presumed to

obtain in such a case as the present (Whitford v. Railroad Co., 23 N. Y. 465; Waldron v. Ritchings, 3 Daly, 288), plaintiff had access to any one or all of the books and records of the corporation (Cook, Stock & S. § 511); yet to defendants he owed no duty of vigilance, they being the parties guilty of the fraud as against him, and he was under no obligation to ascertain the facts with regard to representations as to the truth of which the defendants, with peculiar means of knowledge, had pledged their faith (see Wright v. Deniston [Com. Pl. N. Y., June 4, 1894] 29 N. Y. Supp. 718).

It is not necessary to discuss the allegations of mismanagement. That the complaint is to be upheld only upon the theory of an action for deceit appears to be conceded by the parties, and is clear upon the reasons given at special term.

We find no force in appellant's argument to the effect that a negative, and not a positive, act was done by plaintiff in reliance upon the representations, and that this was therefore not properly "action." The argument is based upon the absence of any cases where the facts have disclosed a failure to perform a certain act as the basis of an action for deceit, but the point is without application in this case. The active exercise of an election is certainly to be taken as action, and this exercise, relying upon the representations, was the basis of plaintiff's damage. It follows that the judgment must be affirmed, with costs; leave to defendants to answer upon payment of costs. All concur.