(28 App. Div. 328.)

### GENET v. PRESIDENT, ETC., OF DELAWARE & H. CANAL CO.

(Supreme Court, Appellate Division, First Department.   April 26, 1898.)

ELECTION OF REMEDIES.

In an action by plaintiff, an owner of coal mines, to terminate an executory contract with defendant for the working thereof, upon the ground that certain acts of the defendant constituted an unskillful and injurious conduct of the work, it appeared that, with knowledge of the acts relied on, plaintiff had subsequently sued defendant for damages sustained thereby, and had brought actions on the contract for an accounting in respect to the amount of coal subsequently mined, and had throughout been receiving the minimum rent and royalties called for by the contract. *Held* that, by electing to enforce her rights under the contract, plaintiff had waived the right to claim a termination thereof by reason of the alleged wrongful acts of the defendant.

Appeal from special term, New York county.

Action by Augusta G. Genet against the president, managers, and company of the Delaware & Hudson Canal Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

F. E. Smith, for appellant.

G. C. Genet, for respondent.

VAN BRUNT, P. J.   An appeal from a judgment entered in favor of the defendant was before this court in March, 1896, and it will not be necessary to rehearse again the facts which appear in the opinion rendered upon that appeal.   2 App. Div. 491, 37 N. Y. Supp. 1087.   Upon that appeal this court held that the court below might have been justified in finding that the contract had not been executed because of the exhaustion of the coal upon the land of the plaintiff, and that for that reason the defendant had no further rights thereunder; but that, in view of the evidence which was offered, the plaintiff might be entitled to relief by reason of the unskillful manner in which the defendant had conducted its mining operations under the agreement; and, as this branch of the case did not seem to have been considered, a new trial was ordered, in order that it might be properly and completely presented.   Prior to such new trial, the defendant obtained leave to amend its answer by setting up that the plaintiff, with full knowledge of the facts in regard to the cave-in which was alleged to be the culmination of the unskillful working of the mine by the defendant, had brought actions against the defendant to enforce the contract, and had accepted large sums of money as royalties under the contract, and had thereby waived the right to terminate the contract, even if such right might otherwise have existed.

The evidence showed that it was in September, 1886, that this cave-in occurred; and that in March, 1888, the plaintiff brought an action against the defendant to recover a large amount of damages sustained by reason of such cave-in; and that in February, 1891, the plaintiff brought an action upon the contract now sought to be

terminated, for an accounting in respect to the coal mined by it under the agreement; and that in February, 1896, the plaintiff brought a further action against the defendant for an accounting of the coal mined under the contract since the date of the action commenced in February, 1891, which last two actions are now pending and on trial before a referee. It further appeared that ever since the said September, 1886, and down to April, 1897, the plaintiff has been regularly paid, and has received the minimum rental and royalties provided for by the contract under consideration.

In view of these facts, it is claimed upon the part of the appellant that the plaintiff has waived the right to terminate the contract, if such right ever existed. It is a familiar principle of law that, where circumstances occur which authorize a party to rescind a contract, he must elect whether he will rescind or whether he will pursue his remedies under the contract, and that he cannot do both. Cases illustrative of this principle are those where property has been obtained by reason of fraudulent representations. The party may elect to sue upon the ground of fraud, or upon the implied contract to pay the value of the property obtained (Terry v. Munger, 121 N. Y. 161, 24 N. E. 272); and the pursuit of either of these remedies is an election which prevents resort to the other. A similar rule prevails in those cases where a party has the right to rescind a contract because of fraud. He may, after knowledge of the fraud, rescind and recover back that with which he has parted, or he may continue to perform on his part, and, unless he has waived the fraud, maintain an action for the damages sustained. If he rescinds, he must do so immediately on discovering the fraud; and, if he continues to perform under the contract, he will be considered to have elected to affirm it. Pryor v. Foster, 130 N. Y. 171, 29 N. E. 123.

Applying the principle here enunciated to the facts in the case at bar, it is difficult to see why the plaintiff, by receiving the rents and royalties under the contract, and by bringing an action for damages because of the breach of the implied obligations of the contract, has not elected to stand by the contract, and not to terminate it. It is true that, in the receipts for the royalties and minimum rents given by the plaintiff for this series of years, the money is said to be received without waiver or prejudice. Without waiver of what, or without prejudice to what, is not stated; and there is no evidence tending to show that the defendant, upon the payment of the money, agreed that it might be received without the ordinary incidents attending receipt. It is nowhere intimated or suggested that the defendant was aware at the time of the receipt of these rents and royalties (except as to the last few payments) that the plaintiff made any claim that she was entitled to any relief except for damages because of the misuse of her property, and a judgment of the court in this action declaring the lease to have ended according to its terms. There is certainly no evidence of any waiver upon the part of the defendant of such rights as it may have acquired by reason of the action of the plaintiff after she had ob-

tained knowledge of the wrongs which she now alleges she has suffered.   It is a familiar principle that a landlord cannot maintain ejectment against a tenant for breach of covenant, and at the same time receive the rent reserved in the lease; the receipt of the rent with knowledge of the breach being a waiver of such breach. Smith, Landl. & Ten. marg. p. 109, and cases there cited.   It is further laid down in the case of Conrow v. Little, 115 N. Y. 387, 22 N. E. 346, that, where a party takes legal steps to enforce a contract, it is a conclusive election not to rescind on account of anything then known to him.   Other cases might be cited to the same effect, but the principle is well established that a party cannot claim under a contract and claim to rescind at the same time.   The remedies are inconsistent; and, if he has the right to rescind, he must make his election to rescind; and, if he so does, his remedies under the contract cease.   If, upon the contrary, he seeks to enforce his rights under the contract, it is an affirmance of the con-tract, and a waiver of the right to rescind.

It has been suggested that this is an action upon the part of the plaintiff asking the judgment of the court that she be permitted to rescind, and that, as she could not know what the judgment of the court was going to be upon that question, she was entitled to receive the benefits of the contract until it might be ascertained whether she had been able to establish her right to rescind or not, because the court could not permit her to rescind unless the right to rescind upon her part existed.   It is clear that the plaintiff is not a ward of the court.   She has to act for herself, and she is to determine for herself whether or not she has a right to rescind; and, after she has exercised that right as far as she is able to do it, she may undoubtedly come into court to have that action established by the judgment of the court; but the judgment relates back to the rescission, and has its foundation thereon.   Although a party may have lost his right to rescind, or may be unable to rescind because of inability to comply with the rules of law respecting rescission, yet it by no means follows that all remedy is lost.   He still has his action for damages resulting from the wrongful act of the other contracting party.   Gould v. Bank, 99 N. Y. 333, 2 N. E. 16.   But such an action in no way affects the binding force or validity of the contract in question.   It is a remedy afforded by the law to compensate a party for wrongs which have been committed against him in respect to the contract or its subject-matter.   It is undoubtedly true that, if the defendant had not at least tendered these rents and royalties, its rights under the contract would have been forfeited.   But it is not true that, if the plaintiff had not accepted the rents and royalties tendered after she claimed the right to rescind because of the wrongful act of the defendant, the validity of the contract would have been thereby affected.   The defendant was bound to tender, but the plaintiff was not bound to accept if by so doing she lost her right, which was more valuable than the immediate receipt of the rent or royalty.   It would seem, therefore, that, by enforcing her rights under the contract, the plaintiff had waived the right to claim a termination of the contract

by reason of the alleged wrongful acts of the defendant. In view of the conclusion at which we have arrived upon this point, it seems to be unnecessary to discuss the question presented by the respondent that this agreement was a mere revocable license, because it appears that, even if it was revocable, its existence has been recognized and insisted upon by the plaintiff, and consequently no effectual revocation has ever been made.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.