GENET v. PRESIDENT, ETC., DELAWARE & H. CANAL CO.

(Supreme Court, Appellate Division, First Department. March 9, 1900.)

COMPLAINT—DISMISSAL—EXTRA ALLOWANCE.

An extra allowance of $1,000 to defendant on the dismissal of the complaint with costs was improper, where it did not appear on what claim for damages the trial court made such allowance, or that he received any evidence to support it.

Appeal from special term.

Action by Augusta G. Genet against the president, managers, and company of the Delaware & Hudson Canal Company. From a judgment in favor of defendant, plaintiff appeals. Modified.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

George C. Genet, for appellant.
T. F. Conway, for respondent.

INGRAHAM, J. The nature of this action and the relief sought by the plaintiff appears in the opinion of this court when this case was before us on the former appeals. 2 App. Div. 491, 37 N. Y. Supp. 1087; 28 App. Div. 328, 51 N. Y. Supp. 377. The various questions which have arisen under the instrument between the parties to this action, and which have given rise to this litigation, have been the subject of much discussion, and have resulted in a considerable divergence of judicial opinion. It would appear, however, that, so far as this court is concerned, all the questions involved in this action have been determined. In the first action brought under this agreement, which went to the court of appeals, and is reported in 122 N. Y. 505, 25 N. E. 922, the rights and obligations of the parties under the agreement were determined, and it was there held that the acts of the defendant in its mining operations were authorized by the contract. As was said by the court of appeals on the second appeal (136 N. Y. 602, 32 N. E. 1079, 19 L.

R. A. 130) in discussing the effect of the judgment entered on the first appeal:

"Thus, the right to use the shafts and machinery on plaintiff's land in aid of mining operations on adjoining lands was held to be expressly given as a present right by the terms of the instrument; the right to pile culm and waste upon the surface was found in its express permission; and the right of drainage through the gangways opened to other shafts to the lower point of the Marvin shaft, to be thence pumped out to the river, was deduced from the terms and conditions of the contract."

The court, however, held that the question as to whether the contract did or did not convey the coal in fee was not before the court upon the first appeal; and it was held that the contract was executory, and must be treated, not as a deed into which no unexpressed covenants could be implied, but as an executory contract, the interpretation of which is open to clear and reasonable implications, and that there was an undertaking, to be implied from the terms of the contract, that the defendant would not willfully incapacitate itself from taking out more than the minimum quantity of coal per year. The question before the court was on demurrer to the complaint in that action, and upon the facts admitted by the demurrer the court said, at page 611, 136 N. Y., page 1082, 32 N. E., and page 133, 19 L. R. A.:

"The question here is not one of waste or of injury to real property, or even of a tort or a wrong. It is whether, under this contract, fairly and justly construed between the parties, there was an understood consideration for it, beyond the minimum royalty secured, in the business option and choice of the lessee to mine a much larger amount if, under the existing circumstances, it should think proper to do so. I think there was. I can readily see that it served as the determining motive on the part of the plaintiff to the making of the contract. Corporations follow their interests, as they should. What the defendant's interest would be, Mrs. Genet knew; and, when she took the risk of what it would do,—of its reserved option,—she was entitled to have it, and not bound to submit to its utter destruction. * * * The chance of that option, exercised, as both parties understood it should be, fairly and honestly and in good faith, was of great value to Mrs. Genet, but the lessee has destroyed it utterly by its own negligent act. In so doing, we think it broke the contract, and therefore that the complaint stated a good cause of action."

The question at issue in this action is whether the defendant, by its acts since the execution of the contract, either intentionally or negligently so treated the plaintiff's property that its ability to exercise its option to mine more than the minimum quantity allowed by the contract was destroyed; and, if it had so intentionally or negligently placed it out of its power properly to operate the mines upon the plaintiff's property, was it liable in an action for damages for the injury occasioned by its breach of the contract, or had the plaintiff the right to terminate the contract and recover back her property? This question being thus open, this action was brought on for trial. Upon that trial the complaint was dismissed upon the merits; the court holding upon the evidence in that case, under the law of the state of Pennsylvania, which had been proved as a fact, that this instrument was in legal effect a grant in fee of the coal as land, and that the rule applied by the court of appeals when

the case was before it upon demurrer to the complaint did not apply, as the construction to be given to the contract under the law of Pennsylvania was different from that which the court of appeals held to be the proper construction of the contract under the law of this state. Upon appeal to this court that judgment was reversed (2 App. Div. 491, 37 N. Y. Supp. 1087) upon the ground that the decision of the court of appeals in the second case was binding upon this court; it being there said, in speaking of the judgment of the court below:

"But it is manifest that the basis of his decision was his interpretation of the instrument, and it seems to be equally clear that such interpretation is different from that which has been placed upon it by the court of appeals in another action between the same parties. It may be entirely true that the court was justified in finding that the contract had not been executed, because of the exhaustion of the coal upon the land of the plaintiff. But it is not so apparent that the plaintiff may not be entitled to some relief under the implied promise contained in the agreement as interpreted by the court of appeals, by reason (if she established the fact) of the unskillful manner in which the defendants have conducted their mining operations under the agreement. It may very well be that such a state of facts might be shown as would justify the court in terminating the contract because of the willful violation by the defendants of their duties in respect to the method of conducting the work, rendering it unsafe and improper for the plaintiff to permit her property to run the risk of absolute destruction if left to the tender mercies of the defendants."

Upon the new trial under this judgment the court found for the plaintiff, and a judgment was rendered in her favor. Upon appeal to this court, however, that judgment was reversed, and a new trial ordered. 28 App. Div. 328, 51 N. Y. Supp. 377. It was then held that whatever right the plaintiff had to terminate the contract because of the wrongful or negligent acts of the defendant under the contract was waived by her on receiving the rents and royalties under the contract, and by bringing actions for damages because of a breach of the implied obligations of the contract, and that by such acts the plaintiff had elected to stand by the contract, and not to terminate it. Upon this trial the facts which this court upon the former appeal held to be an election by the plaintiff to stand by and enforce the contract, rather than to terminate it, were established without substantial contradiction. It thus appears that all questions as to the plaintiff's right to relief in this action have been disposed of.

The relief that the plaintiff demands in this action is (1) that said contract has become executed and ended, and that the defendants have no further rights thereunder, and that they be adjudged to remove from said premises all of their said breakers, steam engines, railroad tracks, and improvements; (2) that they, their agents, officers, etc., may be perpetually enjoined from claiming any further interest in said property under said agreement, and from denying plaintiff's right thereto free from said agreement, and that they be forever enjoined from bringing said water from said Leggett's Creek shaft to said Marvin shaft, and pumping the same to the surface or otherwise, and from bringing coal from said farm to said Marvin

shaft to be cleaned, stored, or shipped, and from dumping any more culm, slate, or bone onto the surface of said land; (3) that they may be required and adjudged to account with plaintiff, and to pay her the damage she has sustained (that is, a reasonable compensation for the benefit and advantage to them for the mining of said coal from said·farm through said Marvin shaft, to wit, to the sum of five cents per ton for each ton of said coal so shipped therefrom as aforesaid); and (4) that they, their agents and servants, may be enjoined and restrained from claiming or exercising or alleging any right, title, or interest or claim thereto, and from denying or in any way interfering with plaintiff's right and title to said premises. The right of the defendant under the agreement to mine coal from the adjoining mines through the shaft through the plaintiff's property, and the right to drain the water from the adjoining mines through such shaft, was established by the decision of the court of appeals. 122 N. Y. 520, 25 N. E. 922. Its right to declare the contract abandoned and to recover the possession of the property was waived by the receipt of royalties under the contract, and the election by the plaintiff to enforce the contract; and the evidence was undisputed that the coal upon the property had not been exhausted. Thus, it was established that the plaintiff was not entitled to any relief in this action, and it follows that the dismissal of the complaint upon the merits was correct.

The plaintiff further appeals from an order granting to the defendant an extra allowance of $1,000. The direction for such allowance is contained in the decision, whereby the court directs judgment to be entered dismissing the complaint on the merits, with costs, including an extra allowance of $1,000, to be taxed in favor of the defendant and against the plaintiff. No evidence was presented to the court as to any basis upon which this allowance was to be awarded, nor does it exactly appear upon what claim for damages the court based this extra allowance. It is true that the complaint demands judgment that the defendant be required and adjudged to account with the plaintiff, and to pay her the damages she has sustained; that is, a reasonable compensation for the benefit and advantage to it for the mining of said coal from said farm through said Marvin shaft, to wit, the sum of five cents per ton for each ton of said coal so shipped therefrom. And while it may be possible to spell out from the evidence a basis upon which an award for damages could be granted, if it appeared that the plaintiff was entitled thereto, we do not see from the record that a case is presented which, under the circumstances, justified the court in awarding to the defendant this extra allowance, without some independent evidence as to the value of.the claim of the plaintiff, upon which an extra allowance could be based. We think, therefore, considering the nature of this demand for damage, the evidence, and the fact that the ground upon which the plaintiff has been defeated was one not taken by the original answer, but was interposed by way of amendment·after the first reversal of this judgment, that the additional allowance should not have been granted.

The judgment is therefore modified by striking out the additional allowance of $1,000, and as so modified affirmed, with costs of this appeal to the respondent. All concur.